28 F.3d 965
 63 USLW 2062, 1994-2 Trade Cases P 70,709,
29 Fed.R.Serv.3d 572, 25 Bankr.Ct.Dec. 1381
 In re, INTL NUTRONICS, INC., Debtor.
Jerome ROBERTSON, Trustee; Chapter 7 Trustee of
International Nutronics, Inc., Plaintiff-Appellant,
v.
ISOMEDIX, INC., a Delaware corporation; Radiation
Sterilizers, Inc., a California corporation
individually and as joint venturers,
Defendants-Appellees.
 No. 91-15253.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 12, 1993.
Filed Aug. 10, 1993.
Withdrawn June 27, 1994.
Decided June 27, 1994.
 
 Jeffrey J. Parish and Andrea J. Ingram, Rosenblum, Parish & Bacigalupi, San Francisco, CA, for plaintiff-appellant.
 Peter J. Busch, Howard, Rice, Nemerovski, Canady, Robertson, Falk & Rabkin, San Francisco, CA, Ian N. Feinberg, and Gray Cary Ware & Freidenrich, Palo Alto, CA, for defendants-appellees.
 Appeal from the United States District Court for the Northern District of California.
 Before: CANBY, and BRUNETTI, Circuit Judges, and WILSON*, District Judge.
 Opinion by Judge CANBY.
 ORDER
 The petition of appellees for rehearing is granted. The case is re-decided on the petition for rehearing, the response thereto, and the briefs and record previously filed in this court. The opinion of this court reported at 3 F.3d 306 is hereby withdrawn, and the attached opinion is hereby adopted.
 OPINION
 CANBY, Circuit Judge:
 
 
 1
 In this case, we must decide whether bid-rigging and antitrust claims brought by a trustee on behalf of a bankrupt estate are barred by the res judicata effect of a bankruptcy court's sale order.
 
 BACKGROUND
 
 2
 International Nutronics, Inc., the estate in bankruptcy, was in the business of sterilizing medical instruments and other equipment by gamma radiation. The sterilization process involved the use of cobalt-60, an isotope of cobalt. Cobalt-60 is expensive and difficult to acquire. It is highly radioactive, decaying rapidly and losing its value as a source of gamma radiation. It poses significant health risks.
 
 
 3
 At the time it filed for bankruptcy, Nutronics was in possession of two quantities of partially decayed cobalt-60. One was located at Nutronics' facility in Irvine, California; the other, at Nutronics' facility in Palo Alto, California.
 
 
 4
 In November 1987, plaintiff-appellant Robertson, Nutronics' Trustee in bankruptcy, solicited bids for the cobalt-60. Defendant-appellees Isomedix and Radiation Sterilizers, Inc. (RSI), competitors in the radiation sterilization business, submitted separate bids. Isomedix offered to pay seventy cents per curie,[1] or about $600,000, for the Irvine cobalt-60. RSI offered to buy the Irvine cobalt-60 for sixty-five cents per curie, curies to be measured by the isotope's radioactivity at the time of delivery three months later. RSI subsequently amended its bid, offering to pay 102% of the amount any competing bidder offered. Neither Isomedix nor RSI offered to purchase the Palo Alto cobalt-60.
 
 
 5
 Robertson rejected both offers. He subsequently asked Isomedix and RSI to extend new bids. Having learned that they had been the only bidders, Isomedix and RSI then notified Robertson that they had formed a joint venture to purchase and remove both supplies of cobalt-60 for $350,000. After Robertson rejected this bid, Isomedix and RSI increased their joint bid by $14,000.
 
 
 6
 Robertson accepted the joint bid and sought from the bankruptcy court an order approving the sale. In neither his letter of acceptance nor his request for a bankruptcy sale order did Robertson express objections to the joint venture. The court issued an order unconditionally confirming the sale.
 
 
 7
 About twenty-two months later, Robertson filed an adversary proceeding in the bankruptcy court, Isomedix and RSI as codefendants. The parties agreed to withdraw the reference to bankruptcy court, and the proceeding returned to district court. Alleging that the joint venture constituted an unlawful combination, the complaint sought relief under 11 U.S.C. Sec. 363(n) and sections 1 and 2 of the Sherman Act, 15 U.S.C. Secs. 1 & 2.
 
 
 8
 The defendants moved for summary judgment, asserting that the claims were barred under the doctrine of res judicata. The district court granted the motion.ISSUES ON APPEAL
 
 
 9
 Robertson challenges the district court's grant of summary judgment, contending that the doctrine of res judicata does not foreclose him from seeking damages under 11 U.S.C. Sec. 363(n) or from bringing an action under sections 1 and 2 of the Sherman Act.
 
 DISCUSSION
 
 10
 I. DOES THE RES JUDICATA EFFECT OF BANKRUPTCY COURT'S SALE ORDER FORECLOSE THE TRUSTEE FROM BRINGING AN ACTION TO AVOID A SALE UNDER 11 U.S.C. Sec. 363(n)?
 
 
 11
 Section 363 of the Bankruptcy Code defines the trustee's rights and powers of sale over the assets of the bankrupt estate. Subsection (n) provides:
 
 
 12
 The trustee may avoid a sale under this section if the sale price was controlled by an agreement among potential bidders at such sale, or may recover from a party to such agreement any amount by which the value of the property sold exceeds the price at which such sale was consummated, and may recover [attorney fees and expenses].
 
 
 13
 11 U.S.C. Sec. 363(n) (1993). The statute also provides that the court may award punitive damages against any party who enters a sale price agreement "in willful disregard of this subsection." Id.
 
 
 14
 We agree with Trustee Robertson that the bankruptcy court's sale order does not bar him from asserting a claim under section 363(n). In In re Intermagnetics America, Inc., 926 F.2d 912 (9th Cir.1991), we held that section 363(n) is a "statutory exception to the finality of bankruptcy sale orders for res judicata purposes."[2] Id. at 917. The Intermagnetics holding recognizes that to rule that the res judicata effect of a sale order forecloses the trustee from asserting a claim under section 363(n) "would render meaningless the ability of the bankruptcy trustee to 'avoid a sale' under Sec. 363(n)." Id.[3]
 
 
 15
 The bankruptcy and Article III courts have traditionally possessed the authority to set aside sale orders in bankruptcy cases where the sale is "tinged with fraud, error, or similar defects which would in equity affect the validity of any private transactions" and when "compelling equities outweigh the interests in finality." In re CADA Invs., Inc., 664 F.2d 1158, 1162 (9th Cir.1981). By giving the Trustee the right to avoid a sale if the sale price was arrived at through bid-rigging, section 363(n) supplements the general powers of the court to avoid a sale. 2 Lawrence P. King, et al., Collier on Bankruptcy, p 363.14 (Lawrence P. King, ed. 15th ed. 1993).
 
 
 16
 II. IS THE TRUSTEE'S ACTION PURSUANT TO 11 U.S.C. Sec. 363(n) BARRED BY THE LIMITATIONS PROVISIONS OF FED.R.CIV.P. 60(b)?
 
 
 17
 Section 363(n) is not, however, a wholly independent exception to the rules of finality. The Federal Rules of Bankruptcy Procedure provide that--with certain exceptions not applicable here--Rule 60 of the Federal Rules of Civil Procedure governs cases under the Bankruptcy Code. Fed.R.Bankruptcy P. 9024, 11 U.S.C. Sec. (1984); see also id. advisory committee's note (stating that "all orders of the bankruptcy court are subject to Rule 60 Fed.R.Civ.P."); CADA, 664 F.2d at 1161 (noting that bankruptcy court's equitable power to set its orders aside "is now formalized in Bankruptcy Rule 924, which makes Federal Rules of Civil Procedure 60 applicable to bankruptcy cases").
 
 
 18
 Rule 60(b) provides six sets of circumstances under which a district court may relieve a party from a final judgment or order. The Trustee's claim under section 363(n) can be characterized only as a motion under clause 3 of Rule 60(b), permitting relief for "fraud ... misrepresentation, or other misconduct of an adverse party." Rule 60(b) imposes a one-year limitations period on such motions. The Trustee did not file a Sec. 363(n) claim until twenty-two months after the bankruptcy court issued the sale order; therefore, the claim is time-barred.
 
 
 19
 Accordingly, while we reject the district court's determination that the res judicata effect of the bankruptcy court's sale order barred the Trustee from bringing a claim under section 363(n), we affirm the district court's dismissal of the Sec. 363(n) claim.
 
 
 20
 III. DOES THE RES JUDICATA EFFECT OF BANKRUPTCY COURT'S SALE ORDER FORECLOSE THE TRUSTEE FROM BRINGING THE ANTITRUST CLAIMS?
 
 
 21
 The doctrine of res judicata bars a party from bringing a claim if a court of competent jurisdiction has rendered final judgment on the merits of the claim in a previous action involving the same parties or their privies. In re Jenson, 980 F.2d 1254, 1256 (9th Cir.1992). "Res judicata bars all grounds for recovery that could have been asserted, whether they were or not, in a prior suit between the same parties on the same cause of action." Clark v. Bear Stearns & Co., 966 F.2d 1318, 1320 (9th Cir.1992) (emphasis added).
 
 
 22
 The Trustee argues that the antitrust claims could not have been asserted in the sale order proceeding, because antitrust actions do not fall within the bankruptcy court's jurisdiction. The bankruptcy court has jurisdiction to entertain cases arising under the Bankruptcy Code and "core proceedings arising under title 11." 28 U.S.C. Sec. 157 (Supp.1993). Core proceedings are "matters concerning the administration of the estate" and rights created by title 11. Id.; see also In re Mankin, 823 F.2d 1296, 1299-1307 (9th Cir.1987) (discussing distinction between core and non-core issues), cert. denied, 485 U.S. 1006, 108 S.Ct. 1468, 99 L.Ed.2d 698 (1988). The Trustee contends that the antitrust action against Isomedix and RSI could not, by these standards, be a core proceeding. Isomedix and RSI, on the other hand, contend that the antitrust claim would qualify as "core" because it arose out of a post-petition contract entered by the trustee in the course of administering the debtor's estate. See, e.g., In re Arnold Print Works, Inc., 815 F.2d 165, 168 (1st Cir.1987); cf. In re Eastport Associates, 935 F.2d 1071, 1077 n. 4 (9th Cir.1991) (finding it unnecessary to reach question whether to adopt other circuits' expansive view of core jurisdiction regarding post-petition contracts).
 
 
 23
 We need not decide whether Robertson's antitrust claim would have qualified as a core proceeding, a determination to be made in the first instance by the bankruptcy court. See 28 U.S.C. Sec. 157(b)(3). Even if we assume, without deciding, that the antitrust claim is non-core, it nevertheless could have been asserted in the bankruptcy court. The bankruptcy court may hear non-core matters that are "related to a case under Title 11." 28 U.S.C. Sec. 157(c)(1). Although the bankruptcy court does not have power to render a decision in non-core matters, the claim will be decided. The bankruptcy court may submit proposed findings of fact and conclusions of law, which the district court reviews de novo. Id.; In re Mann, 907 F.2d 923, 926 (9th Cir.1990). Or the reference can be withdrawn when the claim is made, and the matter decided from the beginning by the district court (a procedure that was in fact followed when the adversary complaint now the subject of this appeal was filed in bankruptcy court). Thus the claim could have been asserted at the time of the proceeding confirming sale, and this opportunity is sufficient to satisfy that requirement of the doctrine of res judicata. See Sanders Confectionery Products, Inc. v. Heller Financial, Inc., 973 F.2d 474, 483 (6th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 1046, 122L.Ed.2d 355 (1993). There is accordingly no structural obstacle to a core proceeding's having a preclusive effect on a later non-core claim. Id.; see also Sure-Snap Corp. v. State Street Bank & Trust Co., 948 F.2d 869, 873 (2d Cir.1991) (giving preclusive effect to core proceeding and barring lender liability claim); Matter of Met-L-Wood Corp, 861 F.2d 1012, 1016-17 (7th Cir.1988) (order confirming sale of assets preclusive of bid-rigging and RICO claims), cert. denied, 490 U.S. 1006, 109 S.Ct. 1642, 104 L.Ed.2d 157 (1989).
 
 
 24
 It is true that the Fifth Circuit has twice ruled that core proceedings could not be given preclusive effect upon later non-core claims. See Latham v. Wells Fargo Bank, 896 F.2d 979, 983 (5th Cir.1990); Howell Hydrocarbons, Inc. v. Adams, 897 F.2d 183 (5th Cir.1990). With that position we respectfully disagree, in part because it does not take account of the fact that a non-core claim can be asserted in bankruptcy court, even though final decision will take place in district court. See Sanders, 973 F.2d at 483. Moreover, a recent Fifth Circuit decision casts some doubt on the continuing vitality of the Latham rule. See Matter of Baudoin, 981 F.2d 736, 741 & n. 10 (5th Cir.1993).
 
 
 25
 Finally, the Trustee argues that res judicata does not apply because the causes of action were not the same. The bankruptcy court's order confirming the sale of cobalt-60 was a routine and perfunctory matter, according to the Trustee, and was far too narrow in scope to constitute the same cause of action as the antitrust claims now being pursued. This argument is not without force, but ultimately we reject it.
 
 
 26
 Here the Trustee bases his present antitrust claim on collusive behavior of Isomedix and RSI that was known to him at the time he sought confirmation of the sale, and, indeed, the "collusion" was apparent on the face of the bid. If the joint bid was unduly low because of unlawful collusion, and that fact was known to the trustee at the time, then it should have been brought to the attention of the bankruptcy court. There is little purpose in the court's confirming a sale if it has no power or duty to determine whether the terms of sale are in the best interests of the estate. Thus this proceeding confirming the sale was a perfunctory and narrow one only because the Trustee chose not to make it otherwise.
 
 
 27
 Narrow or not, it seems clear that a bankruptcy court's order confirming a sale has preclusive effects. If the bankruptcy court's confirmation of the sale were not ordinarily res judicata with regard to matters of collusive bidding, there would have been no need for Congress to enact section 363(n). That statute, as we have seen, permits the trustee to avoid a sale "if the sale price was controlled by an agreement among potential bidders." 11 U.S.C. Sec. 363(n). This provision is "a statutory exception to the finality of bankruptcy sale orders for res judicata purposes." Intermagnetics, 926 F.2d at 917 (emphasis added). Having failed to avail himself of this exception in a timely fashion, the Trustee is bound by the res judicata effect that otherwise applies.
 
 
 28
 The only remaining question, then, is whether the causes of action are the same. Factors that we consider in determining whether successive suits involve the same cause of action are:
 
 
 29
 (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts.
 
 
 30
 Clark v. Bear, Stearns & Co., 966 F.2d at 1320. Factors (1), (2) and (4) militate strongly in favor of preclusion, and factor (3) is at worst neutral.[4] The rights of Isomedix and RSI to their purchase at the agreed price would clearly be impaired or destroyed by a successful antitrust recovery. "The suit is a thinly disguised collateral attack on the judgment confirming the sale." Met-L-Wood, 861 F.2d at 1018 (referring to bid-rigging and RICO claims, among others). The evidence of unlawful collusion that, if it existed, ought to have been brought forward at the confirmation hearing is the same evidence that will form the foundation of the antitrust claim. And, finally, the sale confirmation and the antitrust claim unquestionably arise out of the same transaction, and this is the most important factor of all. Costantini v. Trans World Airlines, 681 F.2d 1199, 1202 (9th Cir.), cert. denied, 459 U.S. 1087, 103 S.Ct. 570, 74 L.Ed.2d 932 (1982).
 
 
 31
 Thus three of the Bear Stearns factors apply easily. The other, "whether the two suits involve infringement of the same right," is harder to apply because the sale confirmation is not easily characterized as involving infringement of a right. But the Trustee's argument now is that the sale itself was an antitrust injury; the sale price was unduly low because of an antitrust violation. The sale may therefore be viewed as infringing the same right that is the basis of the antitrust claim, and that infringement could have been asserted in the confirmation hearing. We conclude, therefore, that in light of all of the Bear Stearns factors, the antitrust claim constitutes the same cause of action for res judicata purposes as that decided by the order confirming the sale. The district court was correct in ruling that it was barred.
 
 CONCLUSION
 
 32
 The district court erred in ruling that the Trustee's claim under section 363 is precluded under the doctrine of res judicata. Section 363 creates an exception to res judicata that permits the Trustee to seek to avoid the sale after the bankruptcy court orders or confirms a sale. However, the Trustee's motion under section 363 is time barred by Rule 60(b) of the Federal Rules of Civil Procedure.
 
 
 33
 The Trustee's antitrust claims are barred by res judicata, because they constitute the same cause of action for preclusion purposes, and they could have been asserted in the bankruptcy court at the time confirmation of the sale was sought.
 
 
 34
 Accordingly, we affirm the district court's judgment dismissing the section 363(n) and the antitrust claims.
 
 
 35
 AFFIRMED.
 
 
 
 *
 Honorable Stephen V. Wilson, United States District Judge for the Central District of California, sitting by designation
 
 
 [1]
 A curie is a unit of radioactivity that measures a specific number of disintegrations per second
 
 
 [2]
 Intermagnetics was decided about a month after the district court issued the summary judgment order in this case
 
 
 [3]
 According to the appellees, Intermagnetics is distinguishable from the present case because the sale of Intermagnetic's assets was procured through fraudulent warranties and fraud upon the court. We disagree. There were three separate and independent grounds for the Intermagnetics court's ruling. That the bankruptcy court had conditioned the sale on representations that turned out to be fraudulent was one ground for reversing the summary judgment order. That the buyers had committed fraud upon the bankruptcy court was a second ground for avoiding the sale. That, in granting summary judgment in favor of the buyers, the district court had "failed to address the Trustee's bid-rigging claim under 11 U.S.C. Sec. 363(n)" was a third and separate ground for reversing the district court's judgment. The facts that fraud had been committed and that the bankruptcy court's sale order was conditional did not figure into the Intermagnetics court's interpretation of section 363(n). Intermagnetics, 926 F.2d at 917
 
 
 [4]
 The absence of one factor would not dictate a result in favor of the Trustee. Weighing of the four factors is not a mathematical exercise, and no single factor is automatically decisive. See Costantini v. Trans World Airlines, 681 F.2d 1199, 1202 n. 7 (9th Cir.1982)